**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1734
_____

TATYANA POLETAYEVA;
UMESH KUMAR,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A096-264-917 and A096-264-918)
Immigration Judge: Eugene Pugliese

_____

Submitted Under Third Circuit LAR 34.1(a)
April 1, 2010

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges

(Opinion filed: April 2, 2010)
_____

OPINION
_____

PER CURIAM

    Lead Petitioner Tatyana Poletayeva is a native of the former Soviet Union and a

citizen of Uzbekistan. Her husband, derivative-Petitioner Umesh Kumar, is a native and

citizen of India. They entered the United States in June 2002 and overstayed the time period permitted by their visas. After being issued a Notice to Appear in April 2003, Poletayeva sought asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Poletayeva's applications were based on her fear of persecution and torture in Uzbekistan on account of her Russian nationality and Russian Orthodox religion. Like the Immigration Judge (IJ) before it, the Board of Immigration Appeals (BIA) found that Poletayeva failed to carry her burden of proof as to each application for relief. Because the BIA's decision is supported by substantial evidence, we will deny Poletayeva's petition for review.

## I.

At a hearing before the IJ, Poletayeva testified that she was born in Uzbekistan, and that both her husband and daughter were born in India. The daughter currently resides in Uzbekistan with Poletayeva's parents. Poletayeva had not always resided in Uzbekistan prior to entering the United States in June 2002. She lived in India for approximately eight months, starting in November 1995, and in the United States for around five months in 2001. Poletayeva returned to Uzbekistan after each period of temporary residency.

Poletayeva testified that since childhood she had been mistreated by ethnic Uzbeks. In grade school, specifically: she was hit with rocks and spit on; her school uniform was torn; and she was called unpleasant names and threatened. She described one incident that occurred years later when an elderly Uzbek woman yelled at her and then

2

ripped a cross from her necklace, after which a crowd of other Uzbeks attacked her. After high school, Poletayeva worked as a nurse, and then as the proprietor and director of an English-language school. Poletayeva described another incident when she was beaten by a group of Uzbeks after she refused to transfer ownership of her school to an Uzbek woman named Ilga Uragashava. Months later, Poletayeva's daughter was kidnapped by Uragashava and her cohorts for leverage in acquiring ownership of the school. Poletayeva acquiesced and signed over her ownership interest in the school in order for her daughter to be released from captivity.

Poletayeva's husband briefly testified as well. He described an incident when he and Poletayeva were beaten by police officers. He testified to the bigotry in Uzbekistan and India with regard to interracial couples. At the close of the hearing, the IJ made an adverse credibility determination, and found that the evidence presented by Poletayeva did not support a finding of past or future persecution or torture.

The BIA dismissed Poletayeva's appeal. The BIA did not adopt the IJ's adverse credibility determination. It nonetheless found that Poletayeva failed to carry her burden of proof for asylum, withholding of removal, and CAT relief. The BIA found that the alleged "physical assault and verbal threats . . . by themselves, do not rise to the level of persecution." The BIA found that although Poletayeva's "daughter was allegedly kidnaped [sic] in 2002 . . . this appears to be part of a scheme to take over the school owned by [Petitioners] and not on account of a ground protected under the Act." The BIA

3

also found that Poletayeva's return trips to Uzbekistan from both the United States and India cast doubt on her alleged fear of future persecution. The BIA rejected Poletayeva's claim that there exists a pattern or practice of persecution against Russian Christians in Uzbekistan. Finally, the BIA found that Poletayeva had failed to establish that she would likely be tortured upon removal to Uzbekistan. Poletayeva appealed.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. See Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007). "Where the BIA renders its own decision and does not merely adopt the opinion of the IJ, we review the BIA's decision, not that of the IJ." Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008). We review the BIA's findings for substantial evidence, upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

## III.

On appeal, Poletayeva devotes a substantial portion of her brief to challenging the IJ's adverse credibility determination. This is an exercise in futility, as we are only reviewing the decision of the BIA, and the BIA has already determined that the IJ's adverse credibility determination was erroneous. The BIA accepted Poletayeva's testimony as credible, but nonetheless found it, along with the rest of the evidence presented, to be insufficient for meeting Poletayeva's burdens of proof. For the reasons

described below, we find the BIA's conclusions to be supported by substantial evidence.

The random physical assaults, harassment, and discrimination suffered by Poletayeva are not acts sufficiently severe to constitute past persecution on account of a protected ground. See Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) ("persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom'") (quotation omitted).[1] Nor has Poletayeva demonstrated a pattern or practice of persecution against Christians, Russian Orthodox observers, or even non-Muslims in general. Moreover, and as emphasized by the BIA, Poletayeva's returns to Uzbekistan from both the United States and India seriously undermine her alleged well-founded fear of persecution. See 8 C.F.R. § 208.8(b) (indicating that an applicant who leaves the United States and returns to the country of claimed persecution is presumed to have abandoned her application, absent compelling reasons); see also Toloza-Jimenez v. Gonzales, 457 F.3d 155, 161 (1st Cir. 2006) (holding that the fact that Toloza "traveled twice to the United States . . . and yet she returned to Colombia each time, strongly indicat[ed] that she has no fear of persecution.").

Because substantial evidence supports the BIA's rejection of Poletayeva's asylum

---

[1] Substantial evidence also supports the BIA's finding that a protected ground was not "at least one central reason," 8 U.S.C. § 1158(b)(1)(B)(i), for the kidnapping of Poletayeva's daughter. Cf. Amanfi v. Ashcroft, 328 F.3d 719, 727 (3d Cir. 2003) (noting that "the mere existence of a generalized motive underlying persecution cannot establish the proposition that the alien fears persecution on account of that motive.").

claim, the same can be said for its rejection of Poletayeva's claim for withholding of removal. See Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004) (noting that "an applicant who does not qualify for asylum also does not qualify for withholding of removal."). With regard to Poletayeva's CAT claim, "[a]n applicant for relief on the merits under [Article 3 of] the Convention Against Torture bears the burden of establishing that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 64 (3d Cir. 2007) (quotations omitted). Poletayeva has failed to demonstrate that she was intentionally inflicted with severe pain or suffering in Uzbekistan. Furthermore, she has neglected to point to any evidence in the record to demonstrate that the prospect of such harm is likely if she is removed from the United States. Therefore, substantial evidence supports the BIA's finding that Poletayeva has not established entitlement to CAT relief.

Accordingly, we will deny the petition for review.